**L. D. RATLIFF, Appellant,**

v.

**Pauline H. MAYO, Appellee.**

Court of Appeals of Kentucky.

May 11, 1956.

Francis M. Burke, F. Dale Burke, J. A. Runyon, Pikeville, for appellant.

James W. Wine, E. N. Venters, Pikeville, for appellee.

CULLEN, Commissioner.

L. D. Ratliff was injured and sustained property damage when his automobile was struck by one operated by Pauline Mayo. In his suit for damages the court overruled the defendant's motion for a directed verdict and submitted the case to the jury, which was unable to agree upon a verdict. The defendant then moved for judgment "as if the requested verdict had been directed." The court sustained this motion and entered judgment dismissing the complaint. Ratliff has appealed.

The judgment was based upon the trial court's determination that Ratliff was guilty of contributory negligence as a matter of law. The correctness of this determination is the sole issue on the appeal.

Ratliff owns a public garage situated on the west side of U. S. Highway No. 23 a few miles south of Pikeville. The garage building is 72 feet in length, fronting on the highway. The front of the building is 25 feet from the west edge of the highway pavement. At the south end of the garage there is a driveway leading back to the home of one Mitchell Preston. Across the highway from the garage is Ratliff's home. The driveway leading to his home is approximately opposite the north end of the garage.

On the morning of October 28, 1953, around 7:30, Ratliff backed his personal Cadillac automobile out of a stall at the south end of his garage building, preparatory to taking it across the road to his home. He backed out to the south, and came to a stop parallel to the highway, headed north, with part of his car across the driveway leading to the Preston home. At this point the front of his car was around 90 feet distant from the driveway to his home, across the highway to the north. He put his car in motion and

*angled* slowly across the highway towards his driveway. As he was entering the driveway the left rear quarter of his car was struck by the Mayo automobile, going south on the highway.

The highway surface is 22 feet in width at the place in question, and Ratliff's car was around 18 feet in length. The highway is straight at this point and there is a clear view to the north for 600 or 700 feet.

Ratliff testified that after backing his car from the garage he glanced to the north and saw nothing except a school bus some 500 feet away, and its red stop lights flashing as customary when stopped to pick up children. He then turned his head to the south and saw no traffic coming from that direction. In the meantime Mr. Preston had started out of his driveway in his car and had come to a stop behind the Ratliff car because it was partly across the driveway. Ratliff looked to see what Mr. Preston was going to do, and then proceded out into the highway. He estimated that perhaps *10 seconds* elapsed from the time he first looked to the north until he had reached the center of the road, when he looked to the north again and saw Mrs. Mayo's car approaching, on her left side of the road, about 20 or 30 feet away. He depressed the accelerator, to shift his car into passing gear, and endeavored to get off the highway into his driveway. He estimated that the front of his car was some 6 or 7 feet into the driveway when his car was struck by the Mayo car. Since his car was 18 feet long, this would mean that the back portion of his car was extending across the entire east lane of the highway when the collision occurred.

Jesse Steffey testified that he was standing in the doorway of the Ratliff garage at the time of the accident. When Ratliff "started across the road" Steffey saw the Mayo car approaching from the north, about 200 feet away, on the wrong side of the road, going from 50 to 60 miles per hour. Steffey maintained that the Ratliff car was entirely off the highway, in the Ratliff driveway, when struck by the Mayo car, but all of the other evidence in the case shows conclusively that this was not true.

Mr. Preston testified that he saw the Mayo car approaching, about 200 feet away, at the moment Ratliff commenced to drive his car onto the highway.

Mrs. Mayo testified that as she approached the scene, she saw the Ratliff car standing on the west side of the highway, by the garage; as she came nearer, the Ratliff car moved forward a little, on the apron, and she blew her horn; the Ratliff car paused momentarily, and then suddenly pulled out across the highway; she applied her brakes and turned to the left in an effort to avoid a collision, but was unable to do so.

A state patrolman testified that there were skid marks, apparently made by the Mayo car, approximately 22 feet in length, commencing in the west lane and angling to the left so as to end straddling the center line. There also were rubber marks, extending in an arc from the center of the highway to the Ratliff driveway, which apparently were made by the back wheels of the Ratliff car as it was knocked off the highway.

In the briefs, both parties have argued this case as though it was one controlled by KRS 189.330, dealing with the question of right of way when a vehicle enters upon a through highway from a private driveway or from an inferior highway. We think the arguments overlook the fact that Ratliff did not make a routine, normal entrance on the highway, but *angled* across the highway at a very slow speed.

According to Ratliff's own testimony, he traveled for some 70 feet completely or partly in the left lane, at a speed of only 3 or 4 miles an hour. At this rate of speed he was in the left lane for around 10 seconds. He thus was in the same position as if he had been approaching his home from a journey on the highway, and had swung over into the left lane for a distance of 70 feet, and a period of 10 seconds, preparatory to making a right turn into his driveway.

In view of the nature of the movement he was making with his car, Ratliff had **a**

duty to maintain a constant lookout ahead. It is not enough for him to say that he looked once, and then looked again 10 seconds later. In 10 seconds an approaching automobile traveling at the perfectly legal speed of 50 miles per hour would travel a distance of more than 700 feet.

 Ratliff clearly was negligent in driving on the left side of the highway without maintaining a constant lookout ahead. That his negligence was a contributing factor in the collision, to the extent that the collision would not have happened but for his negligence, is a matter upon which reasonable minds could not differ. Accordingly, it is our opinion that the court properly entered judgment for the defendant.

The last clear chance doctrine has no application here because there is no evidence that the defendant became aware of the plaintiff's inattentiveness in sufficient time to avoid the accident. See Prosser on Torts, Ch. 9, sec. 54, p. 408; Saddler v. Parham, Ky., 249 S.W.2d 945; Kentucky & West Virginia Power Co. v. Lawson, Ky., 240 S.W.2d 843.

The judgment is affirmed.

MOREMEN and HOGG, JJ., dissenting.