**DIXIE OHIO EXPRESS COMPANY,**
Appellant,

v.

**EAGLE EXPRESS COMPANY et al.,**
Appellee.

Susie **GOINS,** Administratrix of the Estate of Bruce Goins, Appellant,

v.

**EAGLE EXPRESS COMPANY et al.,**
Appellee.

Court of Appeals of Kentucky.

April 21, 1961.

———◆———

Stoll, Keenon & Park, Lexington, Pat Rankin, Stanford, Viley Blackburn, Somerset, for appellant Dixie Ohio Express Co.

Pleas Jones, Williamsburg, Pat Rankin, Stanford, for appellant Susie Goins, Adm'x.

Denney & Landrum, Lexington, James F. Clay, Danville, Fritz Krueger, Somerset, T. J. Hill, Stanford, John C. Denny, Jr., Monticello, for appellee.

CULLEN, Commissioner.

In a collision involving three semitrailer trucks the trucks were extensively damaged and two of the drivers were killed. Dixie Ohio Express Company, owner of one of the trucks, and Susie Goins, administratrix of the estate of Bruce Goins, driver of the Dixie truck, sued Eagle Express Company and Dunnington Milling Company, owners of the other two trucks, and Victor Hall, driver of the Eagle truck. Eagle and Dunnington counterclaimed against Dixie for damages to their trucks, but did not cross-claim against each other. Hall was not injured and therefore did not assert any counterclaim.

The trial court directed a verdict in favor of Dunnington on the claims of the two plaintiffs, but submitted to the jury the issue on Dunnington's counterclaim. The court also submitted to the jury the issues on the plaintiffs' claims against Eagle and Hall and on Eagle's counterclaim against Dixie. The jury found against the plaintiffs on their claims against Eagle and Hall, and found for Eagle and Dunnington on their counterclaims, awarding each of them around $8,000 in damages. Judgment was entered accordingly. Dixie and Goins' administratrix have appealed. Eagle filed notice of a cross-appeal but did not perfect it, so the arguments in the briefs with reference to the merits of the cross-appeal will not require consideration. See Hall v. Hall, Ky., 328 S.W.2d 541.

The collision occurred in daylight in a rural area on a two-lane federal highway. The Eagle and Dunnington trucks were proceeding north, the Eagle truck being in front at the time of the collision. The Dixie truck was headed south. The Dixie and Eagle trucks collided first, and then the Dixie and Dunnington trucks collided.

■ The only evidence of negligence on the part of the driver of the Dunnington truck was that he may have been following within 250 feet of the Eagle truck in violation of KRS 189.340(7) (b). The appellants maintain that violation of a safety statute is negligence as a matter of law, and since there was evidence to have warranted the jury in finding that there was a violation of the above statute the trial court erred in directing a verdict for Dunnington on the plaintiffs' claims. This contention is not sustainable because it has been held as a matter of law that the violation of this statute has no causal connection with an accident involving a collision

of the violating vehicle with a vehicle approaching from the opposite direction. Tupts v. Judy, Ky., 272 S.W.2d 335; Greathouse v. Mitchell, Ky., 249 S.W.2d 738.

The appellants contend that the trial court erred in refusing to give offered instructions as to the duty of the driver of the Eagle truck in overtaking or attempting to overtake the Dunnington truck, and his duty to have his truck under control if his view was obstructed within a distance of 150 feet. We find no error here. The first of these instructions was neither necessary nor proper because there was no evidence that the Eagle truck was overtaking or attempting to overtake the Dunnington truck. The second was unnecessary because the court gave a general instruction on the duty of the driver to keep his truck under control.

Further contentions of the appellants are that the court should have given an instruction on the duty of the driver of the Eagle truck to sound his horn, and a last clear chance instruction. We will consider these two requested instructions together, because the argument with respect to last clear chance is that the driver of the Eagle truck could have averted the accident by sounding his horn to alert the driver of the Dixie truck to the fact that the latter was on the wrong side of the road. The argument is based on the testimony of the driver of the Eagle truck.

The testimony of the driver was that he first observed the Dixie truck approaching him when it was 175 yards away. At this point the Dixie truck was on its right side. When the two vehicles "had traveled half the distance we were apart before" (which would be around 90 yards) or when the Dixie truck "had covered 125 yards" (which would put the two vehicles within 50 yards of each other) the Dixie truck came across the center line on the wrong side of the road. At this point the trucks were each traveling around 45 miles per hour. The Eagle driver put on his brakes and turned onto the shoulder on his side of the road so that his truck was practically off the road (it is not clear from his testimony whether he did this immediately upon seeing the Dixie truck cross the center line or whether the two vehicles had approached closer together before he realized that the Dixie truck was not going to return to its side of the road). He did not sound his horn. The Dixie truck hit his truck when he had almost come to a stop with most of his truck on the shoulder.

Two vehicles approaching each other at 45 miles per hour will close the distance between them at the rate of some 130 feet per second. Under the Eagle driver's testimony the Dixie truck was at the most 90 yards (270 feet) away when it crossed the center line. So it appears that a little over two seconds elapsed between the time the Dixie truck crossed the line and the time the vehicles collided. The driver of the Eagle truck cannot be charged with immediate awareness of the fact that the crossing of the line by the Dixie truck was not merely a momentary swerving from its course but would continue as a result of its driver's inattentiveness. See Ratliff v. Mayo, Ky., 290 S.W.2d 479. He was entitled to some reaction time. He did react promptly and head for the shoulder. It is our opinion that no reasonable person could say that he had a "clear chance" to avoid the collision by sounding his horn. Even had he sounded his horn there was only a remote possibility that the Dixie driver could have reacted and recovered in time to so change the course of his truck as to avoid the collision. We conclude that the appellants were not entitled to a last clear chance instruction or an instruction on the duty of the Eagle driver to sound his horn.

The final contention of the appellants relates to alleged error by the trial court in overruling a motion by Dixie for leave to file an amended complaint, some six months after the action was begun, making the administratrix of the estate of the driver of the Dunnington truck a party defend-

ant. About the same time that the instant action was commenced the administratrix of the estate of the driver of the Dunnington truck filed an action in the federal court against Dixie. No counterclaim was filed by Dixie in the federal court action. It appears that the trial court in the instant action overruled the motion to make the administratrix a party on the theory that under Federal Rule 13(a) any claim Dixie had against the administratrix arising out of the accident in question was required to be asserted as a compulsory counterclaim in the federal court action, and not having been so asserted it could not be sued on in the state court.

 The question presented is a difficult one. It would appear at first impression that since our Civil Rule 13.01 is identical with and expresses the same policy as the Federal Rule, as a matter of comity and policy our courts should refuse to entertain an action on a claim which under the Federal Rule should have been asserted as a counterclaim in a pending action in federal court. But comity is not accorded generally between the federal and state courts with respect to *primary claims* in actions in personam, the accepted rule being that a person may bring actions in both a federal and a state court on the same claim. See Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226. If a *plaintiff* may sue in both courts on his claim, why should a *defendant* be restricted on his claim to asserting it as a counterclaim in the action first brought against him? The Tennessee Supreme Court, in Hubbs v. Nichols, 201 Tenn. 304, 298 S.W. 2d 801, held that a person who had been sued in a federal court for damages arising out of an automobile accident was not barred, by his failure to assert a counterclaim in the federal court action, from maintaining a suit in the state court for his own damages arising out of the accident.

We concur in the view of the Tennessee Court and it is our opinion that Dixie was not barred from suing the administratrix in the Kentucky courts by the mere fact that there was an action pending in the federal court in which, under the Federal Rules, Dixie's claim should have been asserted as a counterclaim.

 This holding does not mean, however, that the judgment must be reversed. In the first place, the administratrix was not an indispensable party and the motion to join her as a party was not made until some six months after the action was commenced; accordingly, the court had discretion in the matter. In the second place, the appellant Dixie has not shown any prejudice, and we perceive no possible prejudice, resulting from the refusal to permit the administratrix to be made a party. No evidence was presented in the action to show causal negligence on the part of the Dunnington driver and the presence of the administratrix as a party would not have made any more proof available, so Dixie could not have recovered against the administratrix in any event.

The judgment is affirmed.