Roy SELLERS, Administrator for the Estate of Martha Ann Sellers, Deceased, Appellant.

v.

CAYCE MILL SUPPLY COMPANY, Inc., et al., Appellee.

Court of Appeals of Kentucky.

Sept. 22, 1961.

Damon A. Vaughn, Withers, Lisman & Withers, Dixon, for appellant.

J. D. Ruark, Morganfield, Dorsey & Sullivan, Henderson, Edward T. Breathitt, Jr., Hopkinsville, for appellee.

MOREMEN, Judge.

This action arose out of a collision between an automobile being driven by Martha Sellers (who died as a result of injuries received) and a truck owned by Cayce Mill Supply Company, Inc., and operated by Burno Wells. The accident occurred on two-way, blacktopped Highway 56, east of Morganfield in Union County. The car was proceeding in a westerly direction and the truck was being driven along the opposite course. At the trial each party contended that the other party's vehicle was in the wrong lane at the instant of impact. The jury concluded that both parties were operating their vehicles in a negligent manner and refused to award damages to either.

Appellant, who is the administrator of the estate of the deceased Martha Sellers, has appealed and urges that the court erred in (1) permitting a highway patrolman to testify as to certain "ultimate facts," (2) refusing to give a "warning signal" instruction and a "last clear chance" instruction, and (3) refusing to admit testimony of the insurance adjuster.

■ Trooper Henry arrived at the scene of the accident about 15 minutes after it occurred. He made a detailed study of the scene. Measurements were taken. Debris deposits were examined. Skid marks were scanned. Photographs were taken. Maps were made. At the trial he was fully qualified as an expert in traffic accident investigation. He was permitted to testify as to the physical facts which he had accumulated at the accident area. He was permitted to answer:

"Q. Now will you identify the point in the road from which you say tire marks and skid marks led to both vehicles? (objection overruled) A. Right here (indicating on diagram)."

Appellant believes that this answer "amounted to a conclusion and was evidence of the ultimate fact which should have been decided by the jury."

A "fact"—we suppose as the word is used in legal parlance—is a statement of that which one knows actually. It is the assertion of a thing which has transpired; a deed performed, or a thing done or existing. "Facts" are actualities, i. e. what has happened and not that which might have been. Words, by their own force, are not "facts." In use, as a vehicle of communication, words assume the form of abstractions (although we often think of "facts" and "abstractions" being antonymous) in the sense that the communicant selects a word (from a vocabulary) which he believes epitomizes an act which has transpired. The deed performed or the thing done cannot again exist in the condition which existed at the time. The re-enactment in a courtroom may only be had by the image invoked by the use of words. So, in practical application it is difficult to draw a line of demarcation between the points where the witness is stating "facts" or "abstractions" or "opinions" or "conclusions." The words he selects to convey his "facts" are the result of selectivity and, therefore, are conclusions. We find no objection to this type of conclusion—it could not be controlled anyway. A conclusion becomes objectionable, it seems, when a witness exercises and acts upon intelligence which he may have obtained at a place other than the scene of the occurrence which is being

re-constructed in the courtroom. He may, however, draw upon this knowledge if he has had an opportunity to accumulate vast quantities of it and is, therefore, an expert, although even experts are not permitted to speak on all matters.

In the instant case Trooper Henry was requested: "From your past training, your knowledge and your experience and from what you observed at the scene that particular day, state in your opinion where the point of impact occurred." An objection was sustained by the court and in this he was perhaps overcautious in light of our opinion in Browley v. Murkison, Ky., 282 S.W.2d 352, 353, which involved the testimony of another trained police officer and where we said: "The court properly permitted him to use the descriptive phrase 'point of impact' after he had fully disclosed the facts upon which he based his statements." Furthermore, we believe that an answer to this question would not have usurped the function of the jury because a description of the point of impact does not conclusively fix negligence by either party and the witness would not be giving his opinion as to the negligence of either party. The jury would later assume the responsibility of deciding the negligence which caused the vehicles to meet at the point of impact.

We find nothing improper in permitting the witness to describe in detail the tire marks which he observed and to show on a reasonably accurate map where the tire marks led to both vehicles even though the answers in a certain sense are conclusions based upon what the officer saw at the scene of the accident.

Appellant insists that the court should have submitted the case to the jury under a last clear chance instruction, and a warning signal instruction under subsection (1) of KRS 189.080.

Since the giving or refusing to give such instructions turns on the particular facts of each case it is necessary that we describe in a little more detail what oc-

curred at the time of the accident. We may gain only a composite picture of the occurrence from the testimony but it seems fair to assume that when the vehicles first came into view of each other they were separated by a distance of about 160 yards. At that time the car driven by Martha Sellers was slightly on the truck's side of the road. The truck was proceeding at the rate of 40 to 45 miles per hour (one witness put it at an even higher rate of speed). There was proof that the Sellers car was approaching at a high rate of speed although no definite estimate of the rate was given. If we assume, however, that it was moving at about 60 miles an hour, the legal limit, the cars would be approaching each other at the rate of approximately 100 miles per hour, or closing the gap at the rate of 49 yards a second so the 160 yards which separated them when they came into full view of each other would be closed in 3.26 seconds. However, we have held that when the driver of one vehicle sees an approaching vehicle which is over the center of the road he has the right to assume that the automobile will return to its correct lane. In short, he is permitted to believe that the other driver is watching the road ahead of him. See Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; and Stevens v. Potter, 209 Ky. 705, 273 S.W. 470. If the driver has that right it would not be unreasonable for him to assume for another 49 yards or even more that the other driver would turn the car back into his own lane, and additional time would be consumed. By then both parties would have been placed in a position of great peril. We have often held where one is placed in a position of peril by another he is not held to strict accounting for the means he uses to escape. In this case the driver of the truck elected to pull sharply to the right as far as he could so that his right wheels were off the surface of the road and the truck body was close to an embankment. It seems to us that when the driver discovered that the Sellers car was not going to swerve into the right-hand lane he had no clear chance to avoid the collision.

In Dixie Ohio Express Co. v. Eagle Express Co., Ky., 346 S.W.2d 30, 32, which involved an accident between two vehicles approaching each other and in many respects similar to the one here, the court said:

"Two vehicles approaching each other at 45 miles per hour will close the distance between them at the rate of some 130 feet per second. Under the Eagle driver's testimony the Dixie truck was at the most 90 yards (270 feet) away when it crossed the center line. So it appears that a little over two seconds elapsed between the time the Dixie truck crossed the line and the time the vehicles collided. The driver of the Eagle truck cannot be charged with immediate awareness of the fact that the crossing of the line by the Dixie truck was not merely a momentary swerving from the course but would continue as a result of its driver's inattentiveness. See Ratliff v. Mayo, Ky., 290 S.W.2d 479. He was entitled to some reaction time. He did react promptly and head for the shoulder. It is our opinion that no reasonable person could say that he had a 'clear chance' to avoid the collision by sounding his horn. Even had he sounded his horn there was only a remote possibility that the Dixie driver could have reacted and recovered in time to so change the course of his truck as to avoid the collision. We conclude that the appellants were not entitled to a last clear chance instruction or an instruction on the duty of the Eagle driver to sound his horn."

In the case under submission we are of opinion that here too the court properly refused the last clear chance instruction, under its peculiar facts, because it was shown that the driver of the automobile had, up to the time of the collision, as great an opportunity, if not greater, to avoid the impact as did the driver of the truck.

■ We also believe the court was correct in refusing to instruct that the truck driver had a duty to sound his horn. This instruction itself could properly be given only under the last clear chance theory which we have discussed above and held inapplicable, that is, even though the Sellers car was in the wrong lane the truck driver had the last clear chance to avoid the accident by sounding his horn. As was said in the Dixon case: "No reasonable person could say that he had a 'clear chance' to avoid the collision by sounding his horn."

We point out that although both the truck owner and its driver counterclaimed for damages, the jury's verdict was a "dogfall." Thus it was therefore of opinion that both parties were negligent under the instructions which were given.

■ Finally we believe the court was correct in excluding evidence concerning an agreement between insurance adjusters for one to furnish the other with a copy of a witness' statement. The matter was not relevant to the issue to be tried and would have injected questions of insurance liability into the case.

We believe the parties had a fair trial and the judgment is therefore affirmed.