**Lige BAILEY, Appellant,**

**v.**

**Arlie BARNETT et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1971.

Rehearing Denied Oct. 1, 1971.

J. K. Wells, Paintsville, William Redwine, Sandy Hook, for appellant.

Earl R. Cooper, Marcus Mann, Salyersville, for appellees.

DAVIS, Commissioner.

This controversy arises out of a two-vehicle collision which occurred on U. S. Highway 460 between Salyersville and West Liberty. Lige Bailey, defendant in the trial court and appellant here, was driving his unloaded truck westwardly on U. S. 460. Mrs. Gracie Barnett, one of the plaintiffs in the trial court and an appellee here, entered U. S. 460 from a private farm driveway intending to drive eastwardly. The farm driveway was located on the north side of the highway. Mrs. Barnett's intended route of travel required that she cross the westbound traffic lane and turn to her left. The farm driveway was situated in a right curve for westbound traffic. The topography at the scene caused limited visibility for both the appellant and Mrs. Barnett.

Verdict for claimed personal injuries was rendered in behalf of Mrs. Barnett for $12,000, and $5,000 in behalf of her eight-year-old son, a passenger in the car. The jury awarded nothing to Arlie Barnett, owner of the car driven by Mrs. Barnett.[1] The counterclaim of Lige Bailey for personal injuries and property damage was dismissed pursuant to the verdict.[2] On this appeal Bailey asserts that (1) Mrs. Barnett was guilty of contributory negligence as a matter of law in failing to yield the right of way; (2) no negligence of Bailey was shown; and (3) the verdicts are excessive.

Most of the basic facts surrounding the accident are not in dispute. Mrs. Barnett testified that she stopped at the mouth of the driveway before entering U. S. 460. She said that she looked in both directions and saw no vehicle approaching, whereupon she proceeded onto the highway. When asked on direct examination when she first observed Bailey's truck, Mrs. Barnett responded:

"Well, before I got my car all the way across, I seen Bailey—I seen the truck coming, and I straightened up and then when I straightened up I noticed him coming right at me. I was in my lane and I had moved from where I had crossed, and I looked and seen him coming, which his truck was partly across."

She explained that she meant that the truck was partly across the center line of the road into her lane. Mrs. Barnett declined to make any estimate of the distance between her car and Bailey's truck when she first saw the truck. When asked about the speed of the Bailey truck, she answered:

"Well, I would say he was coming fast but I can't give an estimate of how many miles he was going an hour. He had come so fast on me, but I would say fast."

In her answers to questions on cross-examination, the following excerpt of Mrs. Barnett's testimony is noteworthy:

"Q. When did you first see Bailey's truck?

A. Well, when I started across the road, before I got straightened up, I looked and seen him in the curve.

Q. Had you completely straightened up in your lane?

A. No, not when I seen him.

Q. Had you crossed the center line?

A. No.

Q. You had not gotten across the center line when you saw him coming?

A. No, not when I saw him coming.

Q. At that time did you see him swing to his left side?

---

1. Arlie Barnett has not appealed.

2. No cross-appeal was taken by Lige Bailey.

A. Well, I went on and straightened up and when I seen him where he had to cut his wheels for the curve, it looked like he just come straight, come right on my lane.

Q. Had he crossed over the center line when you saw him before you got in your lane and straightened up?

A. Well, I seen him coming and the first I seen of him his truck was partly across the line.

Q. Was it angled toward the lane you were going to get in?

A. It was angled toward the lane I was in.

Q. Now, if you saw him before you got across the center line, you saw him before you got in your lane coming this direction, didn't you?

A. Yes, sir."

Bailey's truck left skid marks on the highway which were identified by a state trooper. The marks were fifty feet in length and began in Bailey's westbound traffic lane and angled across the center line into the eastbound traffic lane. The point of impact between the vehicles was fairly well established as being slightly east of the driveway's intersection with the highway. It was shown that the Barnett car was struck in its left front portion by the right front portion of the truck. The Barnett car came to rest about twenty-seven feet west of the point of impact heading in a westwardly direction, substantially in the center of the highway. The Bailey truck came to rest off the north side of the highway.

Bailey maintained that he was traveling between thirty-five and forty-five miles per hour and first observed the Barnett car as it was stopped in the mouth of the drive-way with its front wheels barely on the blacktop. At that time, he estimated, he was within fifty feet of the Barnett car and in his proper traffic lane. Thereupon, according to Bailey, the Barnett car pulled into the highway leaving him no choice except to attempt to avoid a collision by driving to his left.

■ In support of his argument that Mrs. Barnett was guilty of contributory negligence as a matter of law, the appellant calls attention to KRS 189.330(7) which provides:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on the highway."

Appellant concedes that the duty to yield is not absolute, since the failure to so yield does not absolve the favored driver of his duty to exercise reasonable care to avoid collision. Siler v. Williford, Ky., 350 S.W. 2d 704, 708. Appellant contends, however, that the duty to yield is absolute in the sense that a failure to yield constitutes negligence and is not excused by the disfavored driver's failure to see the favored vehicle, citing and relying upon Robinson v. Cull, Ky., 416 S.W.2d 346. An examination of the Robinson opinion discloses that the disfavored driver was permitted to recover despite a claim of contributory negligence as a matter of law. It was there recognized that a disfavored driver has a duty to look, which includes the duty of seeing what is obvious unless there is some excuse for not seeing it. In the Robinson case the collision occurred at night, and there was evidence that the favored driver was operating his car without headlights. In the present case there was evidence which would have warranted the jury to find that Mrs. Barnett did look to her left and that Bailey's truck was not then so near the intersection as to be within her range of vision. In such a circumstance, it cannot be held as a matter of law that a driver is negligent in entering the highway from a private drive.

■ It will be remembered that fifty feet of skid marks were laid down by Bailey's truck. The speed of the truck was

characterized as "fast" by Mrs. Barnett, whereas Bailey testified of a speed range of thirty-five to forty-five miles per hour. Bailey was familiar with the intersection, having driven along that way many times. Both he and Mrs. Barnett were aware of the dangerous condition created by the virtually blind intersection. Considering the obvious force of the collision and reckoning a normal reaction time before Bailey could apply his brakes, the physical facts were sufficient to support a finding by the jury that Bailey's truck was beyond the possible range of Mrs. Barnett's vision when she entered the highway. The physical circumstances were sufficient to refute Bailey's own estimate of his speed. In the particular circumstances of this case, it was proper for the court to submit to the jury the issue of contributory negligence on the part of Mrs. Barnett.

The appellant contends that he was free of negligence and thus should have had a directed verdict. In Webb Transfer Lines, Inc. v. Taylor, Ky., 439 S.W.2d 88, it was noted that the point of impact was in the left traffic lane of the defendant, as was true in the present case. There it was pointed out that a prima facie case of negligence is made against a driver when it is shown that the accident occurred on that driver's left side of the highway. The same decision, discussing many prior decisions, expressed the rule as follows:

"The rule is that when a collision occurs on the defendant's left side of the road, there is a prima facie case of negligence. The obligation to go forward and to explain the reason for being on the wrong side of the road passes to the defendant. If the explanation is so clear and convincing and all the circumstances and fair inferences that could be drawn from them show that the reason for being on the wrong side of the road was completely unrelated to any negligence of the defendant, then the defendant is entitled to win by directed verdict, but if the reasons, circumstances or the inferences are not that clear then the jury must de-

termine the question. For a discussion of some of the cases we have cited and the applicable rules see Thompson et al. v. Mills, Adm'r, Ky., 432 S.W.2d 448 (1968)." Id. 439 S.W.2d at page 95.

Bailey makes substantially the same contention as was made by the driver of the Webb truck. In essence, Bailey contends that Mrs. Barnett pulled suddenly into his line of traffic when it was too late for him to stop his truck and that he took the only available course by turning to the left in an effort to avoid the collision. The question is whether the evidence in support of that explanation is so clear and convincing, when considered with all the circumstances and fair inferences that could be drawn, as to show that Bailey's reason for being on his left side of the road was completely unrelated to any negligence on his part.

In 8 Am.Jur.2d, Automobiles and Highway Traffic, Section 737, pages 294, 295, there is a discussion of the relative duties of motorists at blind intersections. It is there stated in part:

"A motorist having the right of way who approaches a blind intersection has the duty to proceed at a reasonable rate of speed, and may have the duty to slow down or stop, and to sound a warning, or to turn aside or yield the right of way, if reasonably possible, to avoid a collision. Whether a motorist who has the right of way at a blind intersection is guilty of contributory negligence in his manner of entering the intersection is a question for the jury where reasonable minds could well differ."

Since Bailey did know of the dangerous intersection, the matter of his speed and whether he gave any warning of his approach (and there is no evidence that he did) constitute circumstances sufficient to create a jury issue as to his negligence in the particular circumstances of this case. Put another way, the evidence of speed and lack of warning when approaching the known danger zone sufficiently weakens Bailey's explanation of being on the left

side of the highway as to require a jury determination of the question. The appellant was not entitled to a directed verdict.

As noted, the jury awarded $5,000 for the appellee, Philip Barnett. Philip was eight years old at the time of the accident and lost three permanent upper teeth from the front of his mouth. It was shown that denture appliances will be required and that a permanent denture cannot be supplied until he has reached mature growth. In Adams v. Combs, Ky., 465 S. W.2d 288, decided March 26, 1971, an award of $6,000 for the loss of two upper front teeth was sustained against a claim of excessiveness. No reason is advanced which would indicate a basis for upsetting the award in behalf of Philip Barnett in the present case.

It is also claimed that the $12,000 award in behalf of Mrs. Barnett is excessive. It was shown that prior to the accident Mrs. Barnett suffered from a mild diabetic condition which was controlled by use of oral medication. Following the accident, she complained of pain in her chest, and her diabetic condition worsened to the extent that she has been required to make daily use of insulin injections. It was shown that she developed a state of hypertension and a depressive condition. Mrs. Barnett testified that she has had continuing chest pain since the accident. Medical testimony offered in her behalf indicated that no demonstrable source of chest pain was found by the physicians who examined her. However, the doctors said that such pain could have traumatic origin without being demonstrable by X-ray. Medical evidence for Mrs. Barnett indicated that her labile blood pressure, her enhanced diabetic condition, and her depressive emotional condition reasonably were ascribable to the injuries she sustained in the accident. The probable duration and prognosis of these conditions could not be definitely predicted, according to the medical testimony. In all these circumstances, the court is unable to find that the award of

$12,000 is so excessive as to appear at first blush to have been rendered as the result of passion or prejudice. The court has often recognized that the determination of the propriety of verdicts in personal-injury cases depends upon the facts of the individual case. Holdings in previous cases presenting similar facts are persuasive if due consideration is given to changes in economic conditions. Viewed in this light, the verdict of $12,000 does not appear excessive. See Townsend v. Stamper, Ky., 398 S.W.2d 45, 12 A.L.R.3d 108.

The judgment is affirmed.

All concur.