## Webb v. Adams.

Dec. 14, 1945.

336

[black redaction bars]

Joe Hobson for appellant.

Clark Pratt for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

On November 11, 1943, a truck owned and operated by the appellant, Hursh Webb, collided with the automobile of the appellee, Mollie Gayheart Adams, on Highway No. 80 in Knott County, near the Stumbo Memorial Hospital.

On the day the collision occurred, Webb had been loading a car of logs. He had finished his work late in the afternoon and had taken his helpers to their respective homes. After delivering the last helper to his home, he was driving his truck down the highway in the direction of his home.

At the time of the accident, the appellee, who lives about three miles from Hindman, accompanied by her daughter, Velma Lee Gayheart, and Arthur Watts, after having delivered some flowers to her daughter's girl friend, who was sick in the Stumbo Memorial Hospital, was driving up Highway 80 in the direction of her home.

About one-half a mile from the hospital there is a long curve to the left in the direction the appellee's car was traveling. On the inside of the curve is a high rock cliff and on the right or outside is a steep bank ten to fifteen feet deep. The accident occurred near the middle of the curve, yet slightly nearer the approach to the curve in the direction from which the appellee's car was traveling.

The appellant and appellee make contradictory claims as to the place or location on the road as to where the collision occurred. The appellant claims it was on his side. The appellee claims it was on her side.

The appellee sought judgment in the sum of $16,500 as follows: (1) $1,000 for damages to her automobile. (2) $500 for hospital and medical expenses. (3) $10,000

for her purported and claimed reduction of her power to earn money. (4) $5,000 for physical pain and suffering.

The appellant counterclaimed for $750 for personal injuries sustained by him and for damages to his truck.

On trial the jury returned a verdict for appellee in the total sum of $10,848, as follows:

(1) Car damage, $425.
(2) Hospital bill, $423.
(3) Pain and suffering, $3,000.
(4) Permanent reduction to earn money, $7,000.

The defendant appealed and urges four reasons in support of his position that the judgment cannot be sustained. In the first place, appellant insists that the physical facts of the case lead unerringly to the conclusion that the collision occurred on the appellee's left hand side of the highway and on appellant's right hand side. This claim he bases upon some testimony about brake fluid which had escaped when the brake hose was broken as a result of the collision. It was testified by both the appellant and a Mr. Freeman that the brake hose was broken and that they saw what looked like brake fluid on the pavement of the highway some ten to twelve inches from the center of the road on the truck's right hand side. This was corroborated by a Mr. Mayo. He further maintains that it was utterly impossible, because of the sharp curvature of the road at the point of collision, for the appellee to see the approach of the truck as stated by her and Watts, and, in support thereof, introduced a picture of the road which he insists speaks for itself. The appellant himself testified in a rather speculative way as to what he thought happened. He said the appellee was blinded by the lights of his truck and pulled over on his side of the road, and then, at the instant of collision, suddenly started to her side of the road. Opposed to this evidence was that of the appellee and Mr. Watts, each of whom testified that when they first saw Webb's truck coming it was swerving and zigzagging across the road; that Mrs. Adams was driving her car on the right side of the road; that when she saw the truck coming straight at her she brought her car almost to a stop, pulled out on her right almost entirely on the gravel portion of the road close to the embankment, and that the truck did not make the turn on the curve but came straight into her car.

Other witnesses introduced by the appellee testified that after the collision the Adams' car was on the edge of the road on the right side going in the direction the Adams' car was traveling, with its rear wheels over the bank and its front wheels on the gravel portion of the road; that the left front wheel was pushed back under the car, the left front side mashed in and the steering wheel torn up. They stated that on Mrs. Adams' right hand side of the road was broken glass, a piece of fender or hood from the truck, and that leading from the glass to where the car was sitting were skid tracks of the Adams' car.

Sam Hayes, a State employee, testified that from the point of collision there was a view of approximately 200 feet up the highway.

Bobby Slone stated that you could see at least 250 to 300 feet up the highway.

In the light of the combined testimony above, it cannot be plausibly contended that the physical facts are so persuasive as to warrant the court to invade the functions of a jury and peremptorily instruct for the appellant.

The appellant has argued at length that the court erred in instructing the jury and in refusing instructions offered by the appellant. Over the objections and exceptions of both appellant and appellee, the court gave instructions 1 and 2, as follows:

"No. 1. If the jury believe from the evidence that defendant, Hursh Webb, on the occasion mentioned by the witnesses, was driving his truck on the wrong side of the highway and thereby ran into plaintiff's car while same was on the right-hand side of the highway you should find for plaintiff and fix her damages as directed in Instruction No. 4."

"No. 2. But if you believe from the evidence that plaintiff, Mollie Gayheart Adams, was at the time of the collision driving her automobile on the wrong side of the highway and thereby ran into defendant's truck while same was on his right-hand side of the highway, you should find for the defendant and fix his damages as directed in Instruction No. 5."

The appellant offered what might be called the ordinary orthodox instructions. At first blush it might be

made to appear that there is merit in appellant's contention, but upon careful review of the entire evidence, we find that as to the questions raised by the proffered instructions and the objection to the given instruction, the case resolves itself into one question, namely: On which side of the road did the accident happen? Our decisions covering the basic fundamental rules of instruction are entirely too numerous to discuss herein, all of which recognize the duty of the court by its instructions to inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled, and to instruct the jury on questions of law growing out of the facts in the particular case, thus furnishing guidance to the jury. We are not inclined to encourage the giving of unorthodox and unusual instructions. On the contrary, we rather encourage the use of the more usual tested and proven instructions. However, after giving much consideration to the questioned instructions, we are of the opinion that under the facts and circumstances of this particular case the given instruction properly apprised the jury of the questions involved and the rule of law applicable thereto; that in no manner were they misleading and was the law applicable to the facts in issue.

In his contention that the trial court erred in permitting the appellee to introduce incompetent and irrelevant evidence, the appellant complains about the admission of the evidence of Manis Watson, one of the helpers of the appellant, who testified that while appellant was taking him home, he undertook to get out of the truck. He was asked: "State to the jury if he (Hursh Webb) was intoxicated that evening as he drove you home and let you out of the truck?" Answer: "He sure was." In answer to the question, "Why did you ask him to let you out of the truck?" he answered, "I was afraid that he was going to wreck." Objection was interposed. Afterwards the question was asked: "How far was this up Jones Fork to where you got out?" He answered: "About four miles." The court said: "I will sustain that objection." The appellant claims that he objected all the way through and complains because the court merely said "I will sustain that objection," and did not advise the jury which objection he sustained, and did not admonish the jury not to consider such evidence. He insists that mere sustention of the objection did not

remove the prejudicial effect of receiving such evidence. Appellant seems to overlook the fact that the line of testimony introduced by the witness, Manis Watson, was for the purpose of proving the intoxicated condition of the driver of the truck and was directed, not at the recklessness with which he was driving the truck four miles away from the accident, but as to the condition of the driver as to being drunk or sober. We believe this testimony to be competent.

It is contended lastly that the damages awarded are excessive. Considerable evidence was introduced by doctors and others, with little variance among them. As a result of the wreck, the appellee's kneecap was fractured, two ribs were broken, the inside of her mouth was lacerated, her wrist and foot were injured, there was a large cut across the front of her knee and many other cuts and bruises upon her body. She was placed in the hospital where she remained about 10 days, after which she was taken to her home where she remained in bed for several weeks. She was unable to walk for 31 days, there was swelling in her hand which even now causes great pain, her wrist has become ankylosed and weak, accompanied with swelling, she continues nervous and sleeps with difficulty. The muscles in front of the knee had been severed resulting in inability to extend her leg and foot, necessitating the dragging of her foot in walking. There was strong evidence of the permanence of this disability. The above leads us to the conclusion that this last contention of the appellant is also without merit.

Wherefore, the judgment is affirmed.