Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

PER CURIAM.

Motion for an appeal from the Breathitt Circuit Court, Ervine Turner, Judge.

We are affirming the judgment in this case imposing a fine of $200 and sentencing the appellant to 120 days in jail for selling whiskey in Local Option Territory because we think there was sufficient evidence to warrant the submission of the case to the jury. Furthermore, the variance between the indictment and the proof was not mentioned in the motion and grounds for a new trial.

The motion for an appeal is overruled, and the judgment is affirmed.

**Hargis COUCH et al., Appellants,**

**v.**

**Thomas T. HENSLEY, Appellee.**

Court of Appeals of Kentucky.

Oct. 4, 1957.

---

Murray L. Brown, Brown & Bird, London, for appellants.

John M. Lyttle, Roy W. House, and Pleaz W. Mobley, Manchester, for appellee.

STANLEY, Commissioner.

The appeal is from a judgment for the plaintiff for $2,000 in an action for damages sustained in an automobile accident. There is little, if any, material conflict in the evidence of the circumstances. The question is whether there were issues of inferential facts sufficient to submit the case to the jury.

The plaintiff, now appellee, Thomas T. Hensley, lived on a county road which runs for a short distance alongside the south edge of Highway No. 80 and enters it on a declivity at an angle of something like 45 degrees. At this point the highway is straight for 300 yards to the east and 200 yards to the west. The plaintiff left his home one morning in May, 1956, to go to Manchester. The weather was clear and the roads were dry. Hensley testified that he stopped his Plymouth car before entering the highway and "looked up and down the highway to see if there was anything coming. I didn't see nothing so I pulled over on the highway and my motor died, I killed my motor. I pushed my clutch in and went to start my motor with a key. Just in a few seconds I started my motor up. Hadn't been very long until my car was rolling down the highway and the truck knocked me over and off the highway." Hensley had heard no horn of an approaching car. He was not sure whether he crossed the highway diagonally, following the direction of the county road, or went straight across. He got to the north or his right side of the road, about 89 feet from the intersection, when the defendant's truck struck the rear of his car and knocked it off the highway down an embankment. The car was practically demolished and Hensley was severely injured.

The plaintiff's wife, who was on her front porch, corroborated him as to having stopped the car before entering the highway and stated that "nothing was coming." After he had crossed, she looked up the road and saw the truck coming 300 yards away and heard the horn blow in front of her house, which seems to have been about 150 feet from the intersection. Another witness testified the plaintiff stopped his car, then crossed and stopped again on the other side of the highway. He testified that the truck was "going fast." Mary Wiseman, who was at her home on the county road, added corroboration with her statement that she first saw the truck at a restaurant shown to be some 250 or 300 yards away.

When the court had overruled the defendant's motion for a directed verdict, he went forward with the proof.

The driver of the truck, Roe Estep, testified that it was a tandem truck and was loaded with about 18 tons of coal. He was going about 30 or 35 miles an hour. He saw Hensley's car "coming out of the hill" and, as he thought, come to a stop, but Hensley kept on. Estep testified he blew his horn and put on his brakes when

he was about 20 steps or 60 feet away from the intersection and did everything he could to stop the truck but could not within that distance. The car got out on the road and then "bucked and stopped." Estep pulled the truck over to the left side but couldn't get around the car. His best judgment was that the car was "angled across the road" and there was no room for the truck to get by. This testimony is corroborated by a witness who was riding with Estep. A state policeman testified that there were burnt marks on the highway, showing that the truck's brakes had been applied 60 feet before it hit the automobile, the point being established by the debris in the highway, and these marks continued 60 feet beyond. Upon test, the witness found that one could see back toward Hyden, i. e., eastwardly, $\frac{2}{10}$ of a mile, or more than 1,000 feet.

■ We cannot distinguish this case from Vaughn v. Jones, Ky., 257 S.W.2d 583. Under very similar circumstances, we applied the rule that a motorist entering a main highway from a secondary road is, under the statute, required to stop and not proceed if an approaching car is so close as to constitute an immediate hazard (KRS 189.330(4)), and that he will not be heard to say that he looked but did not see an approaching car when it was right there in clear view. One who says that he looked but did not see what was plainly visible may not necessarily be telling a deliberate falsehood. As suggested in the Vaughn opinion, his mind may have been on something else, yet mental abstraction or distraction cannot be recognized as an excuse. Another thing: In the excitement of a moment of peril and an accident one may not comprehend his own fault, or later he may become assured in his own mind of his innocence. Human nature seems to make us all prone to justify our own actions and lay the blame upon the other party. Certainly the undisputable fact is that in the absence of any claim of defective vision, one does see what is clearly visible. In law he is chargeable with doing so. Hence, though bare testimony may exonerate one from culpable negligence, if that testimony is incredible in the light of physical facts or universal empirical knowledge or psychological fact, a verdict based upon the bare testimony cannot be sustained. Brumbach v. Day, Ky., 260 S.W.2d 939.

■ In the present case the verdict being but little more than the amount of proven special damages—doctors' and hospital bills, lost time and damage to the automobile—it indicates the jury was swayed by sympathy for the plaintiff rather than was governed by the law and the evidence. See Coney Island Co. v. Brown, 290 Ky. 750, 162 S.W.2d 785. It is not necessary to determine whether or not there was negligence of the defendant, for, as in the Vaughn case, we are constrained to say that the plaintiff's evidence shows he was contributorily negligent. We are, of opinion, therefore, that the trial court should have directed a verdict for the defendant.

■ The defendant also moved for a judgment notwithstanding the verdict. CR 50.02. It seems the facts of the case were fully developed and that upon a retrial the plaintiff could produce no better or additional evidence to sustain his cause of action. We, therefore, reverse the judgment with directions to enter a judgment for the defendant. CR 50.03; Bowling v. Lewis, Ky., 287 S.W.2d 629.

Motion for an appeal sustained and

Judgment reversed.

BIRD, J., not sitting.