Ormon Earl SHEWMAKER et al.,
Appellants,

v.

Brenda RICHESON, an Infant, by Robert Richeson, Next Friend, Appellee.

Court of Appeals of Kentucky.

March 24, 1961.

Woodward, Bartlett & McCarroll, Owensboro, for appellants.

Humphreys, Jones, Beard & Rummage, Russel C. Jones, William E. Rummage, Owensboro, for appellee.

CLAY, Commissioner.

This appeal is from a $39,000 judgment for personal injuries sustained by Brenda Richeson, eleven years old, in a collision between an automobile in which she was riding and an automobile driven by appellant Shewmaker, an employee of his co-appellant, The Ashland Oil and Refining Company. The accident, a head-on collision, occurred during daylight. Several grounds are urged for reversal.

The road was 16 feet wide and without a line marking the center. The defendants' car, a Plymouth, was traveling westward and entered the inside of a sharp curve. Defendant Shewmaker was alone. The car in which the plaintiff was riding, a Chevrolet, was approaching from the opposite direction.

Plaintiff's mother, driving the Chevrolet, testified that as she crossed a bridge (shown to be about 100 feet from the point of collision) she was going 35 MPH. She at first stated she could see "75 or 100 yards" ahead but later was somewhat uncertain about the distance when defendants' Plymouth came into view. She said it was traveling 60 or 70 MPH. It came across "on my side about three feet" and struck her car when she had come to a complete stop.

Defendant Shewmaker testified that when he came into the curve, going about 45 MPH, he saw the other car coming in the middle of the road possibly 200 or 250 feet away. It never veered over to its right side or slowed down. He immediately applied

his brakes upon seeing the car. He said the collision occurred in his right lane inside of the curve where his car came to rest. He had not sounded his horn.

Witnesses testified to the positions of the cars after the collision and their testimony is confirmed by photographs taken before the vehicles were moved. The Chevrolet was angled in about the middle of the road, with the right front in its right driving lane and its left rear in the Plymouth's driving lane. The Plymouth was angled with its rear completely in its driving lane but its front end three or four feet across the center line in the Chevrolet's driving lane. There were clearly defined skid marks behind the Plymouth extending in almost a straight line, one of which (clearly made by the Plymouth's left wheel or wheels) extended over the center line into the Chevrolet's driving lane.

W. J. Foster, a farmer living in the neighborhood, came upon the scene soon after the collision. He described tire skid marks behind the Plymouth which veered "a little toward the left" and ended "slightly in the left lane of the road". (This was the Chevrolet's lane.) James Cameron came with the wrecker. He testified there were heavy tire skid marks behind the Plymouth, beginning "almost in the middle of the road and across the center of the road" three or four feet to where it was standing immediately after the collision.

■ Clarence Brown, a civil engineer, at the instance of the plaintiff's father, surveyed the road at this point five or six days after the accident and filed a plat of it in evidence. On objection of the defendants, the court excluded his testimony concerning the skid marks of the Plymouth. It showed tire marks which started on the inside of the curve and extended 57 feet in a straight line toward the outside of the curve, the last 14 feet of the left wheel marks being over the center line and ending at a point 1⁷⁄₁₀ feet over the center line. His excluded evidence on this point is in the record as an avowal. Since a witness

who traveled the road every day had testified the tire marks had remained clear six days or more after the accident, the engineer's testimony was admissible.

This evidence of the direction of movement of defendants' Plymouth conforms precisely with the photographs taken at the scene before the vehicles were moved and is consistent with the testimony of plaintiff's witnesses that at the time of the collision the defendants' car was partially on its wrong side of the road. Since the left front of the Plymouth extends forward of the left front wheel and overhangs the wheel to the left, considering the car's angle of approach, the left front of it could have been, as plaintiff's witnesses testified, two or three feet over the center line at the point of impact.

Defendants contend they were entitled to a directed verdict on the ground that the physical facts show conclusively that this accident was solely caused by the negligence of the driver of the Chevrolet, by her coming around the curve on the wrong side of the road. The physical facts do not establish the exact position of the Chevrolet at the time of impact. They do establish that defendants' car skidded 57 feet, that it did not stay on the inside of the curve, and that it actually moved over the center line onto the wrong side of the road before the vehicles collided. It is difficult to understand how these physical facts could prove as a matter of law that defendant Shewmaker could not possibly have been negligent. Assuming the driver of the Chevrolet was on her wrong side approaching the curve, reasonable minds could conclude that even though Shewmaker entered the curve on his right side (1) he was driving too fast approaching the curve, or (2) he did not have his vehicle under reasonable control because he did not keep his car in his right lane. See Gross v. Barrett, Ky., —— S.W.2d ——.

■■ It was not necessary for the plaintiff to prove that defendants' negligence was the sole cause of the accident. If the negl.-

gence of both drivers concurred to cause it, the plaintiff was entitled to recover against the defendant. We do not find the "physical facts" (which actually were consistent with plaintiff's theory of liability) established that defendant Shewmaker was, as a matter of law, free of negligence. Consequently defendants were not entitled to a directed verdict.

The next question involves the competency of evidence offered by defendants and rejected by the trial court. This evidence consisted of a deposition of a school teacher who had taught the plaintiff in her classes before and after the accident. Her testimony was ruled incompetent because relating to events "too remote" from the time of the accident.

The extent of injuries suffered by the plaintiff was a sharp issue in this controversy. Those injuries were concentrated about her face and mouth. She had lost several teeth and suffered some loss of bone from her lower jaw. Plaintiff's evidence was that this injury caused a speech disorder or impediment.

The accident happened July 31, 1957. The school teacher whose testimony is in question had taught the plaintiff in the third grade during the school year 1955–1956 and in the fifth grade during the school year 1957–1958. This witness testified the plaintiff had a speech defect when she was in the third grade (before the accident) and there was no noticeable difference in her speech when she was in the fifth grade (after the accident). During the school year immediately preceding the accident (1956–1957) plaintiff was not in this teacher's class but she had spoken to her a few times in the hall. It was because the witness had not been closely associated with the plaintiff for approximately 16 months before the accident that the court ruled this evidence was too remote to be admissible.

■ We cannot accede to such view. The evidence was relevant to the issue of whether or not the accident was the sole or a major contributing cause of plaintiff's speech defect. The elapsed time between observed events did not necessarily destroy the probative value of this evidence, which was for the jury to determine. The plaintiff's condition before the accident, whether one, two or three years prior thereto, had a logical bearing on the injurious effects of the accident. *Remoteness* relates to *relevancy*, and a relevant fact is not inadmissible because remote in point of time. 31 C.J.S. Evidence § 159, p. 866. Under footnote 2 of this section it is stated:

> "Evidence of prior or subsequent facts is not inadmissible as being too remote where it has a direct relation to, or raises a fair inference as to the existence of, a fact in issue."

See Shatz Realty Co. v. King, 225 Ky. 846, 10 S.W.2d 456, 60 A.L.R. 1374; Lawler v. Copelin, Ky., 258 S.W.2d 913; Bunten v. Davis, 82 N.H. 304, 133 A. 16, 45 A.L.R. 1409; Parker v. Hoefer, 118 Vt. 1, 100 A.2d 434, 38 A.L.R.2d 1216. In our opinion this evidence was materially relevant and it was prejudicial error to deny defendants the right to introduce it.

■ We now come to the instructions, those fertile hunting grounds for error. The first objection is that the trial court, in setting forth the duties of defendant Shewmaker, required him "to sound his horn to give timely notice of the automobile he was driving". This duty was imposed without qualification. Since defendant Shewmaker admitted that he had not blown his horn, the jury must necessarily find him negligent under this instruction. Considering the facts of this case, the imposition of such an unqualified duty was erroneous and clearly prejudicial.

The duty to sound a horn is imposed by two of our statutes. KRS 189.410 places this duty on the motorist "when approaching a curve or an obstruction that prevents a clear view of the highway for a distance ahead of 150 feet". The uncontradicted testimony of defendant Shewmaker is that

he had a clear view of the highway ahead for a distance of 200 to 250 feet. Plaintiff admits in her brief that because of this fact KRS 189.410 is not applicable.

The other statute is KRS 189.080(1). It requires the motorist to sound his horn "whenever necessary" as a warning of his vehicle's approach. The qualification "whenever necessary" is vital. Under this statute the failure to sound a horn is not negligence per se and would only be negligence if a jury decided the conditions required such warning. Therefore, assuming the facts justified an instruction incorporating the duty to sound the horn, the one given was fatally defective.

We are of the opinion, however, that under the facts of this case no instruction on this duty was authorized. The driver of the Chevrolet testified that she was aware of the approach of the Plymouth and even had time to stop her Chevrolet before the collision. Since the purpose of sounding a horn is to apprise those unaware of a vehicle's approach, it is unnecessary when the other party affected has already become cognizant of the presence of the vehicle. As we will discuss more at length hereafter, instructions should be limited to the actual issues that develop from the evidence. The sounding of the horn by defendant Shewmaker was not a material issue under the facts shown. The instruction with respect thereto was unnecessary, misleading and prejudicial.

■ It is next contended the trial court erroneously failed to give defendants a proper affirmative instruction on their defensive theory of the case. Such theory was that the *sole cause* of the accident was the negligence of the driver of the Chevrolet. The court did substantially present this defense by separate instruction No. 2. However, this instruction, though alluding to the "negligence" of the other driver, did not *detail her duties* as a motorist. Defendants contend the failure to do so left the jury without a guide to determine if she had been negligent.

The controversy on this point concerns the proper *form* of a "sole cause" instruction. The problem is fraught with difficulties when we attempt to treat this theory as a special defense. Actually such defensive theory is bottomed on the *act* of some other person *as the exclusive proximate cause* of the accident, and obviously it makes no difference whether such act is negligent, intentional or accidental. We have reached the conclusion that this defensive theory does not warrant a separate instruction in any form if the issue is adequately and properly presented in the instruction which sets forth the conditions under which the defendant would be liable.

■ The purpose of instructions is to submit the applicable law relating to the issues in the controversy for the guidance of the jury in arriving at a just and proper verdict. Stanley's Instructions to Juries, Second Edition, Section 2 (page 3); Webb v. Adams, 302 Ky. 335, 194 S.W.2d 515. The objective is to present an issue or issues in a form intelligible to the jury. Louisville & N. R. Co. v. King's Adm'r, 131 Ky. 347, 115 S.W. 196, 198. The overriding test is whether the issues are submitted accurately and adequately. See Peak v. Arnett, 233 Ky. 756, 26 S.W.2d 1035.

The right to an affirmative instruction on defendants' theory of the case is most frequently encountered in criminal cases. See Stanley's Instructions to Juries, Second Edition, Section 771 (page 15). As a general rule if the principal instruction submits the Commonwealth's theory in readily understandable language and its *negative* completely and adequately covers the defense, the defendant is not entitled to an affirmative instruction. Duvall v. Commonwealth, 225 Ky. 827, 10 S.W.2d 279. This same principle properly may be applied in civil cases, J. I. Case Threshing Machine Co. v. Barnes, 133 Ky. 321, 117 S.W. 418.

In the present case there was a single, clear cut issue with respect to liability.

It was whether or not defendants' Plymouth was operated in such a negligent manner *as to constitute a proximate cause* of the accident. The defense was simply the negative of this position. If defendants proved the act of a third party was the "sole cause" of the accident, they completely rebutted the charge against them. A restatement of this proposition in a separate instruction would be an unnecessary and repetitious absurdity. See Reynolds v. Commonwealth, Ky., 257 S.W.2d 514.

The situation is analogous to that in Hicks v. Commonwealth, Ky., 269 S.W.2d 181. The defendant was accused of killing a young lady with whom he shared a bed. His defense was that she jumped out of bed and killed herself. He contended he was entitled to an instruction on his defense that she was the sole cause of her own death. We rejected this contention on the ground that since the jury could only find defendant guilty if they believed he committed a wrongful act, they must find him not guilty if they believed the woman's death resulted from some other cause. His defense (though involving the act of another) was simply a negation of the prosecution's charge. In the present case the defense that the "sole cause" of the accident was the act of the driver of the Chevrolet constituted simply a negation of plaintiff's claim that defendants' negligence, either independently or concurrently, was a proximate cause thereof. See Gassaway Construction Company v. Gentry, Ky., 277 S.W.2d 848.

In substance, this defense is the converse of the claim. In Lexington Glass Company v. Zurich General Accident and Liability Insurance Company, Ky., 271 S.W.2d 909, it was pointed out that to give separately the converse of an instruction which adequately covers the basic issue in the case would serve to confuse rather than clarify the case for the jury. See also White v. Huffmaster, 321 Mich. 225, 32 N.W.2d 447, which involved the "sole cause" question.

There is another possible objection to giving a separate instruction on the theory of the defense which has been adequately covered by an instruction fixing the conditions of liability. That is, it may violate our rule against giving undue prominence to certain facts and issues. Stanley's Instructions to Juries, Second Edition, Section 28 (page 54).

It is true we have in some cases required or approved the giving of what in effect was a "sole cause" instruction. Crumbaugh v. Roberts, 309 Ky. 439, 217 S.W.2d 974; Middleton v. Jones, Ky., 285 S.W.2d 144. On the other hand, we have held it proper to refuse such an instruction. W. M. Abbott Transfer Company v. Kruse, 272 Ky. 479, 114 S.W.2d 731; Wilson v. Dalton's Adm'r, 311 Ky. 285, 223 S.W.2d 978. In the latter case we stated that while the court would not have committed error had it given such a separate instruction, it was not error to refuse to do so.

Upon reconsideration of the matter we have concluded that this defense is not an affirmative one which necessitates a separate instruction. If the issue is (as it normally will be) properly and adequately presented by the principal or primary instruction, the defendant is not entitled to an additional instruction thereon. (The defenses of "accident" and "sudden emergency" may fall in the same category. See Summers v. Spivey's Adm'r, 241 Ky. 213, 43 S.W.2d 666, and Agee v. Hammons, Ky., 335 S.W.2d 732. In a different category are the defenses of "contributory negligence" and "last clear chance", which are truly *affirmative* defenses by way of confession and avoidance.)

In the present case instruction No. 1 advised the jury that if they believed defendant Shewmaker failed to observe one or more of the statutory duties set forth, and such failure caused the collision, and but for such negligence (if any) the accident would not have occurred, it should find for the plaintiff; otherwise for the defendants. Under *this* instruction the jury must

find for defendants if it believed the sole proximate cause (this is more accurate than "sole cause") of the accident was the operation of the Chevrolet. Therefore on a new trial if substantially the same instruction is given, no separate instruction need be given with respect to the operation of the Chevrolet.

Other objections to the instructions were either not properly preserved for review under CR 51 or do not establish prejudicial error. We, of course, do not reach the question of excessive damages. The judgment must be reversed for the error in excluding the deposition offered by defendants and for the instruction error of imposing an unqualified duty on defendant Shewmaker to sound his horn.

The judgment is reversed for a new trial consistent with this opinion.

BIRD, C. J., and MONTGOMERY, J., dissent from so much of the opinion as denies defendants a directed verdict on the ground that the physical facts show no negligence on the part of defendant Shewmaker.