**WEBB TRANSFER LINES, INC. and James Herman Allen, Appellants,**

v.

**Floyd TAYLOR, Sr., Administrator of Floyd Taylor, Jr., Estate, Appellee.**

Court of Appeals of Kentucky.

Nov. 1, 1968.

As Modified on Denial of Rehearing March 7, 1969.

Roy E. Tooms, Jr., Brown, Tooms & Helton, London, Joe S. Feather, Williamsburg, for appellants.

Charles B. Upton, Williamsburg, Lawrence S. Grauman, Louisville, for appellee.

STEINFELD, Judge.

On a clear afternoon of December 19, 1963, a collision occurred on U.S. Highway 25W south of Williamsburg, Kentucky. The black top portion of the road was 27.9 feet in width. Floyd Taylor, Jr., who was killed, was the driver of an automobile which collided with a truck owned by the Webb Transfer Lines, Inc., and operated by James H. Allen. Taylor's administrator sued the Transfer Lines and Allen and recovered judgment for $75,000.00 against both. They have appealed. We affirm.

Appellants claim that the trial court erred in not directing a verdict in their favor. To consider this argument a statement of facts developed on the jury trial is necessary.

Near the point where the collision occurred U.S. Highway 25W made a long sweeping curve to the left from north to south. Located approximately 50 feet off of the

pavement and on the west side of the road was Don's Drive-In Restaurant. Parking areas and driveways existed all around the restaurant building. To the north of Don's property Old Highway 25 entered U.S. Highway 25W on the west side. Adkins Motel was across U.S. Highway 25W from the restaurant. Savoy Road entered U.S. Highway 25W from the east approximately 400 feet south of the restaurant.

A car facing southwardly was parked south of the restaurant. The occupants, all sitting in the front seat, were Lee Edward Brown on the left side, Henrietta Teague in the middle and Cobey Hoskins on the right side.

Taylor who was alone in his automobile entered the restaurant property somewhere north of the building and circled it. After passing the rear he then drove between the parked car and the south side of the building. Greetings were exchanged with the occupants of the parked car by waving and then he proceeded toward the highway. Testimony is conflicting as to whether his car stopped before reentering the highway. He headed back in a northerly direction. The Webb tractor-trailer which was equipped with dual wheels was hauling 22,000 pounds of tobacco in cloth bags and was traveling southwardly. The car and the truck hit head-on.

Shortly after the collision the sheriff arrived and found Taylor pinned in the automobile. After assisting others in removing him and sending him to the hospital the sheriff made an investigation including measurements. He testified (Sellers v. Cayce Mill Supply Co., Ky., 349 S.W.2d 677 (1961) ) that there were approximately 40 feet of dual wheel skid marks which led to a point near the debris on the highway and that there were grooves in the highway approximately one or one and one-half inches deep near the end of the skid marks. The sheriff said that all of the skid marks, grooves and debris were in the northbound (Taylor's) lane. He also said there was a double yellow line on either side of the center of the road and that the debris, and the cut marks in the black top "* * * were approximately 8 feet in the northbound lane from the double yellow line." The point where the sheriff found the debris was approximately 202 feet from the south side of Don's Restaurant and approximately 275 feet south of the intersection of Old Highway 25 and U.S. Highway 25W. The distance from the intersection of those two highways to the south side of Don's Drive-In Restaurant was approximately 477 feet. The truck, with Taylor's car at its right side, came to rest approximately 80 feet south of the skid marks. The automobile was then facing southwardly.

Robert L. Loudin testified by deposition that he and his wife were traveling northwardly on their way to Williamsburg, Kentucky; that when they passed the Savoy Road he "* * * saw a car stopped in front of Don's Drive-In pull out onto Highway 25 headed north", and at that time he did not see any other vehicle on the highway. He stated: "Well, he had just got out in the road, when I saw a truck approaching, and then he got on his side of the road and traveled about 100 feet when the truck came over in the southbound lane." The deposition continued:

"Q. 34 The truck was in the southbound lane, when you first saw it?

A. Yes, but it crossed over into the northbound lane and hit the car.

Q. 35 How far had that car traveled when the truck came over there and the collision occurred?

A. I will say around 100 feet or 125 feet..

Q. 36 Where was that car at the time the truck collided with him?

A. In the northbound lane on Highway 25.

Q. 37 How far from the center line in the northbound lane?

A. I couldn't say that, but he was in the northbound lane.

Q. 38 Did you see any other vehicle going north, or south, there at that time?

A. No."

He then identified the two vehicles as those driven by Taylor and Allen. A statement taken by an investigator and signed by Loudin was introduced in evidence. It contradicted his testimony and in some respects discredited part of what he said.

Other witnesses for the appellee testified that Taylor was 17 years of age, a good student, in excellent health, that in his spare time he sometimes worked for $3.00 a day and that he performed the usual and customary chores around his residence. They also said that he attended church, had never been in any trouble and that he died as a result of the collision. Appellee rested, whereupon counsel for Webb and Allen moved for a directed verdict which motion was overruled.

James H. Allen testified that he had had years of experience driving the type of vehicle which he was operating on the day of the accident. He said that as he approached the scene where the accident happened he had a view of .4 of a mile; that there was a sweeping curve downgrade until the intersection of Old U.S. Highway 25 and U.S. Highway 25W is reached and then the road had a gradual upgrade in the direction in which he was traveling. He said that he had been going about 35 to 40 miles an hour and that as he was near the intersection of Old U.S. Highway 25 he " * * * mashed down a little on my accelerator to start up this upgrade", and that as he approached Don's Drive-In he was traveling at "Not over forty-five, if that much." He said he was driving on the right hand side of the highway when he saw a green Plymouth car at the south corner of the drive-in. He said: "He was coming out at a slow speed. It looked like he was waiting for me to come by. When I got within seventy-five or one hundred feet, all at once he came out of there just a flying, and the first glimpse I got of him he was looking back over his right shoulder. * * * Well, the next instant the front of his car went down as if he put on his brakes. When he done that, I cut to the left—the only way I had to miss him, * * *. His car was completely blocking the southbound lane." He said that somewhere about the center of the truck hit the left front wheel of the car, and that the left front wheel of the car was on the center line of the road; that the car was caught with the truck which carried it right along by the right hand side of the truck until both vehicles went to the truck's left-hand side of the road and came to a stop. Allen claimed that after the impact he had no control over the steering and no control over the braking power of the truck. The vehicles came to rest straddling the islands in the Adkins Motel driveway about eight feet east of the eastern edge of the paving.

The safety director of the Webb Transfer Lines testified that the trucks owned by that company are carefully examined and in top mechanical condition before they leave on any trip.

Cobey Hoskins, an occupant of the car parked by the restaurant, said that: "I saw him come off the road and come around the building and as he come around, he throwed up his hand and I waved back, and he never did stop as I saw of; and I watched him until the truck hit him"; and that Taylor's car passed behind the car in which he was sitting. He continued that the front of Taylor's car " * * * was about half way on the line in the middle of the road" when the truck and car collided and that the truck "was pretty close" to the Taylor car when he (Cobey) saw it. He said that Taylor was "Kindly angling back down the road, getting back across the line" as it got into the highway.

Henrietta Teague, another occupant of the parked car, said that she first saw the

Taylor car as "It was circling the drive-in." Her testimony was substantially the same as that of Hoskins.

The testimony of Lee Edward Brown, the third occupant of the parked car was substantially the same as that of the other two although he estimated that the truck was four or five car lengths north of the place when and where Taylor drove out onto the highway.

One other witness who was some distance away did not see the collision but heard the impact and he said that he looked up and saw the truck when "It was leaving the center of the road, bearing to the left and coming to a stop in front of Adkins Motel."

■ Appellants charge that over their objection the court admitted incompetent testimony in two respects. The witness Loudin was asked:

"Q. 69 Now was there anything to prevent this truck from staying on its side of the road and not passing this car without colliding with it?

A. No, sir."

Counsel for appellants argue that it permitted the witness to draw a conclusion which was the province of the jury. The witness had shortly before described the positions of the two vehicles, their distance apart when he first saw them and the course they took immediately following the collision. From that interrogation and the questions and answers that followed, it appears to us that the jury could not have failed to understand that the question was with respect to objects, if any, in the area. In any event, we do not consider the action of the court to have prejudiced the substantial rights of the litigants.

■ The sheriff was asked to "tell the jury what statement he (Allen) made, if any, in regard to what speed he made as he went down that hill?" An objection was overruled whereupon the sheriff responded "I don't remember exactly what

he said, but I do remember him saying he was pouring it on. I mentioned to him did he know it was a fifty mile speed zone and he said 'Yes'. I said, 'Were you going 60 or more?' He said 'I don't know. I was pouring it on.'" The objection was not renewed at that time and there was no motion to strike the testimony or to admonish the jury that it could be considered only as to the driver as to whom it was admissible. Consolidated Coach Corp. v. Earls' Adm'r, 263 Ky. 814, 94 S.W.2d 6 (1936). In White v. Com., Ky., 394 S.W.2d 770 (1965) we held:

"In other instances the defendants simply made a blanket objection which the court overruled. The overruling of such objections was proper because the testimony was admissible as against one of the defendants. The court was not required to give an admonition in the absence of a request for it."

The trial court did not err. Com., Dept. of Highways v. Burns, Ky., 394 S.W.2d 923 (1965).

■ Appellants complain that when the deposition of Loudin was read to the jury the court excluded a signed statement which Loudin had given to the investigator. Loudin had been interrogated as to the statement and the circumstances under which it was given. This was read to the jury and later the investigator appeared and testified that he had obtained the statement from Loudin and he read it to the jury. Since the jury heard the statement there is no merit to this complaint.

We now meet the issue of whether the court erred in overruling the motion for a directed verdict at the close of the testimony for appellee and repeated at the conclusion of all of the evidence. Appellants contend that this case is controlled by KRS 189.330(7) which provides:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on the highway."

They cite Brumbach v. Day, Ky., 260 S.W. 2d 939 (1953), and a number of other cases to support that contention. In Brumbach, Day admitted that "he did not stop his motor scooter during a tour through the service station or before re-entering the highway" and that "he saw no vehicle approaching on the highway". Brumbach was approaching on his right side of the highway and struck Day from the rear. In Couch v. Hensley, Ky., 305 S.W.2d 765 (1957), the car entered the highway so close to the approaching truck that negligence was obvious. In Manning v. Claxon's Ex'x, Ky., 283 S.W.2d 704 (1955), the same situation existed as in Couch v. Hensley, supra.

It should be noted that KRS 189.330 (7) directs that when entering or crossing a highway from a private road or driveway the entering vehicle "shall yield the right of way to all vehicles approaching on the highway." This statute was considered in Thomas v. Dahl, 293 Ky. 808, 170 S.W.2d 337 (1943). We wrote:

"Statutes prescribing the duty to yield the right of way to vehicles on a favored highway do not give the driver thereon the absolute and unqualified right to go ahead. It is a relative preference. The preferred driver has the right to assume, although not with implicit impunity, that the other driver about to enter his path of travel from a private driveway will yield to him; yet there remains the duty at all times to exercise reasonable care to avoid collision with other vehicles, and he cannot ignore their presence or possible presence."

This rule was reiterated in Harris v. Morris, Ky., 259 S.W.2d 469 (1953), and in Siler v. Williford, Ky., 375 S.W.2d 262 (1964). In Baker v. Case Plumbing Manufacturing Co., Ky., 423 S.W.2d 258 (1968), we said " * * * KRS 189.330(7) has been held in a number of cases not to impose an absolute duty to yield."

▇▇▇ An ordinance of the city and county of Honolulu which directed that a vehicle emerging from a private driveway " * * * upon entering the roadway shall yield the right of way to all vehicles approaching on said roadway" was considered in State v. Arena, 46 Hawaii 315, 379 P.2d 594 (1963). We subscribe to the following quote from that opinion:

"Though the ordinance then required him to give all vehicles approaching on the highway the privilege of priority in the use thereof, time and space in light of the existing circumstances determine what constituted such priority since, as the definition of right of way indicates, it is only the privilege of immediate priority to use of the highway that the favored vehicle is entitled to. ' "Right of way" merely means a preference to one of two vehicles asserting the right of passage at the same place and at approximately the same time.' Cowan v. Market St. Ry., 8 Cal.App.2d 642, 47 P.2d 752, 754. Under the ordinance he was not required to wait for all approaching vehicles to pass by. His obligation to yield applied only to approaching vehicles that were too close to permit him to complete his turn with safety. 'The operator of the emerging vehicle is required to yield the right of way only to those who are lawfully approaching and who are so near that such operator cannot safely enter the highway.' 60 C.J.S. Motor Vehicles § 347, p. 811."

Also see 7 Am.Jur.2d 756, Section 204.

Some of the facts developed show that the truck was a considerable distance away when Taylor entered the highway, therefore, this case must be considered in the light of KRS 189.300 which reads as follows:

"(1) The operator of any vehicle when upon a highway shall travel upon the right side of the highway whenever possible, and unless the left side of the highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead."

In Stark's Adm'x v. Herndon's Adm'r, 292 Ky. 469, 166 S.W.2d 828 (1942), we said:

"There remains for our determination the question whether proof that Miss Stark was traveling on the wrong side of the highway was sufficient to submit the question of negligence to the jury. This question has been decided many times by this court and the invariable holding has been that proof that the operator of an automobile was traveling on the wrong side of the highway creates a prima facie case of negligent driving, where it results in injury to other users of the highway when on their right side of the road. It then becomes the duty of the defendant, if he would avoid the effect of such prima facie showing, to explain and excuse the fact that his car was on the wrong side of the road. Thronton v. Phillips, 262 Ky. 346, 90 S.W.2d 347; Abel v. Whitehead, 266 Ky. 764, 99 S.W. 2d 770. The defendant offered no evidence on this question. We therefore conclude that the nature of the evidence and its prima facie character were sufficient to submit the issue to the jury."

In Ward v. Music, Ky., 257 S.W.2d 516 (1953), no witness saw the truck hit the child but there was testimony that the truck was being operated at an excessive speed and on the left of the center of the street. The driver testified that he was driving at a reasonable rate of speed on the proper side of the street. The law announced in Herndon was referred to and tacitly approved.

Herndon was again cited in Ellington v. Strader, Ky., 285 S.W.2d 497 (1956), in which appellants' automobile collided with a cow. The same rule was announced as in Herndon.

In Alpha Construction Company v. Branham, Ky., 337 S.W.2d 790 (1960), plaintiff was injured when the horse he was riding became frightened on the approach of defendant's truck, bolted across the highway and jammed its head through the cab window of the truck. In referring to Herndon we said:

"Whether this statute is controlling or whether defendant's driver was required to keep to his right side of the road under the general duty to operate his vehicle in a careful manner (KRS 189.290), we will assume the jury could have found the driver negligent in this respect."

Gross v. Barrett, Ky., 350 S.W.2d 457 (1961), was a wrongful death action arising out of the collision of a truck and an automobile. We referred to Herndon and said "The fact that Barrett (deceased driver of automobile) was on the wrong side of the road at the time of the collision was prima facie proof of negligence on his part. * * * His administratrix had the burden of proving that his presence on the wrong side was not due to his negligence. The evidence with respect to the tracks of the two vehicles, while it gives some credence to the emergency theory, does not exclude the hypotheses of lack of control or excessive speed." Myers v. Walker, Ky., 322 S.W.2d 109 (1959), is cited.

Myers v. Walker, supra, arose out of a collision between a westbound automobile and an eastbound automobile which swerved into its path, allegedly because of presence of mud deposited on the highway by coal trucks. The opinion said: "It is admitted that, at the time of the collision, Mrs. Myers' car was across the center line of the highway in the wrong lane of traffic. Her mere presence there is prima facie proof of negligence on her part and, to sustain her claim of no negligence, she must show by the evidence that her negligence did not put her there. This she undertakes to do by saying that the muddy and slippery condition of the highway was the sole cause of her presence on the wrong side of the highway. In other words, she says she skidded over there and that the skidding was not superinduced by any negligent act on her part. This has been held to be a good defense." The court continued that there was proof that Mrs.

Meyers did not skid across the highway, therefore, there was an issue of fact to be determined by the jury.

Jones v. Carr, Ky., 382 S.W.2d 853 (1964), was a suit for injuries sustained by an automobile passenger against the driver of the automobile and a truck owner. The automobile went out of control on an icy highway and collided with the truck. The court said:

"Plaintiff urges that she was entitled to go to the jury because she had made a prima facie case of negligence when it was established defendant Carr was on the wrong side of the road at the time of the collision (citing Herndon and other cases). Defendant Carr maintains that since the basic cause of the accident was the skidding of her automobile, this is a complete defense. In the light of the foregoing discussion, we must reject this view."

The "foregoing discussion" related to the nature of the occurrences, substantial evidence and the inferences to be drawn. We said: "It must be resolved by the jury *unless other circumstances* (and fair inferences to be drawn from them) so clearly support or overcome the inference of negligence that reasonable minds could not differ about the ultimate conclusion." Jones v. Carr, supra.

The rule is that when a collision occurs on the defendant's left side of the road, there is a prima facie case of negligence. The obligation to go forward and to explain the reason for being on the wrong side of the road passes to the defendant. If the explanation is so clear and convincing and all the circumstances and fair inferences that could be drawn from them show that the reason for being on the wrong side of the road was completely unrelated to any negligence of the defendant, then the defendant is entitled to win by directed verdict, but if the reasons, circumstances or the inferences are not that clear then the jury must determine the question. For a discussion of some of the cases we have cited and the applicable rules see Thompson et al. v. Mills, Adm'r, Ky., 432 S.W.2d 448 (1968).

The testimony of the sheriff and other evidence introduced was sufficient so that the jury could conclude that the accident happened on the left side of the road in the direction in which the truck was traveling and that it occurred approximately 200 feet north of the point where Taylor entered the highway.

The jury had much more before it than the deposition of Loudin and the statement he gave to the investigator. There was substantial evidence to support the claim of the administrator. National Union Fire Ins. Co. v. Forkner, 219 Ky. 119, 292 S.W. 765 (1932). The explanation Allen made for his failure to be on the right side pursuant to KRS 189.300(1) was not so conclusive as to deny the jury the right to pass upon the question of negligence. Thompson v. Mills, Adm'r, supra. We held in Cross v. Clark, 308 Ky. 18, 213 S.W.2d 443 (1948) that a jury may believe any of the witnesses in whole or in part.

Appellants argue that the verdict is flagrantly contrary to the evidence and they cite Wilson v. Wilson, 174 Ky. 771, 193 S.W. 7 (1917); Cloninger v. Commonwealth, 191 Ky. 841, 231 S.W. 535 (1921) and Coney Island Co. v. Brown, 290 Ky. 750, 162 S.W.2d 785 (1942). Appellee responds by referring us to Louisville & N. R. Co. v. Parks' Adm'r, 154 Ky. 269, 157 S.W. 27 (1913); Louisville & N. R. Co. v. Curtis' Adm'r, 233 Ky. 276, 25 S.W.2d 398 (1929) and Webb v. Adams, 302 Ky. 335, 194 S.W.2d 515 (1945). With the conflicting evidence before it the jury was the trier of the facts. Crawford v. Alexander, Ky., 259 S.W.2d 476 (1953) and Com., Dept. of Highways v. Stocker, Ky., 423 S.W.2d 510 (1968). There were no natural or physical facts which so conflicted with the testimony as to make it incredible. There was sufficient evidence of probative value to support the verdict, and it is not flagrantly contrary to the evidence.

[■] Finally it is argued that the verdict was excessive. Appellants concede that Fields v. Baker, Ky., 329 S.W.2d 376 (1959); Koch v. Stone, Ky., 332 S.W.2d 529 (1960) and Slusher v. Miracle, Ky., 382 S.W.2d 867 (1964) announced the law to be that the facts in each case must be considered in determining whether or not the verdict was excessive. They argue that the verdict at first blush appears to be the result of bias, passion and prejudice and that a new trial should be granted and they cite Commercial Carriers, Inc. v. Matracia, Ky., 311 S.W.2d 565 (1958); Fields v. Baker, supra, and Koch v. Stone, supra.

Appellee responds by pointing out that Floyd Taylor, Jr., was a healthy 17 year old boy who was a good high school student, and an industrious, occasional wage earner with a life expectancy of 52.30 years. After drawing certain distinctions between the cases cited by appellants and the facts before us appellee refers us to Cuniffe's Ex'x v. Johnson, 279 Ky. 663, 132 S.W.2d 47 (1939); Fisher Equipment Co. v. West, Ky., 365 S.W.2d 319 (1962) and Cassidy v. Quisenberry, Ky., 346 S.W.2d 304 (1961), and a number of other cases, some of which took into consideration the radical change in the purchasing power of money and the cost of living. In Fisher Equipment Co. v. West, supra, the deceased was 29 years of age at the time of his death. He had a life expectancy of 41.29 years and the jury awarded his estate $125,708.00 which we held was not excessive. In Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979 (1965), the court refused to set aside an $85,000.00 award to the estate of an 18 year old college freshman who died as a result of negligence. There is nothing to indicate that the award in the case now before us was "so large and disproportionate to the probable loss to the estate as to strike us at first blush as being a result of passion and prejudice on the part of the jury * * *". Fisher Equipment Co. v. West, supra.

The judgment is affirmed.

All concur except MONTGOMERY, C. J., and OSBORNE, J., who dissent.

OSBORNE, Judge (dissenting).

As I feel the majority opinion does not adequately set forth the facts of this case nor the circumstances surrounding the witness Loudin's testimony, I take the liberty of stating the facts concerning both the collision and this witness' participation in the case.

This litigation arose out of a truck-automobile collision which occurred on U.S. Highway 25W just south of Williamsburg, Kentucky, in which Floyd Taylor, Jr., was killed. The collision occurred during the daylight hours on the afternoon of December 19, 1963. The weather was clear. The road was dry. Both vehicles were traveling on a blacktop surface with no obstructions to visibility between them. At the point of impact the road runs generally north and south and makes a long sweeping curve to the left as one travels from the north to the south. The point of impact was 202 feet north of the southside of Don's drive-in restaurant, which is located on the west side of the highway approximately 50 feet off the pavement. The testimony is conclusive that decedent entered the driveway to the restaurant from the north, that he circled the restaurant traveling on the blacktop parking surface and reentered the highway on the southside of the drive-in and headed back in a northerly direction. A truck owned by Webb Transfer Lines, Incorporated, loaded with 22,000 pounds of tobacco in cloth bags and driven by appellant James Herman Allen was proceeding from the north to the south, The car and the truck hit head-on on the east side of the road; traveled 80 feet before stopping just off of the east edge of the paved portion of the roadway. Before the collision the truck skidded forty feet leaving tire marks on the surface of the road. At the place where the collision occurred visibility is good for a distance of from ⁴⁄₁₀ to ½ mile. There are two other roads that intersect with High-

way 25W in the vicinity of the spot where the collision took place. Highway 25 comes in from the west and intersects 477 feet north of the north side of Don's drive-in. The road to Savoy turns off of 25W approximately 400 feet south of the south side of Don's drive-in.

I believe the most serious contention and the one which should be dispositive of all the issues herein is the contention that the verdict is not supported by the evidence and the trial court erred in not directing a verdict for the appellants. Determination of this issue will require a detailed examination of the evidence. There were five eye witnesses to the collision including the driver of the truck. Four of these witnesses are in almost complete agreement as to how the collision occurred. The truck driver, James Herman Allen, testified that as he approached Dons' drive-in at a rate of speed not over 45 miles per hour he saw a green Plymouth car at the south corner of the drive-in coming out slowly in the direction of the highway. He stated that the car looked like it was waiting for him to come by but when he got within 75 to 100 feet of the highway all at once, "he came out of there just a flying and the first glimpse I got of him he was looking back over his right shoulder." The driver further testified that "the next instant the front of his car went down as if he put on the brakes when he done that I cut to the left the only way I had to miss him."

The driver's testimony is to the effect that the tractor trailer truck struck the left front wheel of the car as the car came on across the road proceeding at an angle from the east lane to the west lane; that the vehicles struck while the left front wheel of the car was in the center line. The truck driver's testimony is corroborated by the testimony of Cobey Hoskins, Henrietta Teague and Lee Edward Brown, who were all sitting in the front seat of a car together on the south side of Don's drive-in. Their testimony is to the effect they saw the accident happen. The Plymouth driven by the decedent came from the highway into the drive-in from the north, circled around behind the drive-in and passed behind the car in which they were sitting. When the driver came by them, he threw up his hand at them in the form of a greeting and they reciprocated. After circling the drive-in, he reentered the highway at an angle without stopping and was immediately struck head-on by the truck somewhere near the center line of the highway. The foregoing testimony shows conclusively the appellants were without fault and if it were the only testimony in the record there would be no doubt but that a verdict should have been directed for them. However, there was one other witness who saw the collision, Robert L. Loudin. Loudin first testified that he was 28 years of age, lived in Dayton, Ohio, and worked for the city of Dayton in the sanitation department, and that on the date of the collision in Emlyn, Kentucky, he and his wife were driving north on highway 25W and were about to the point where the Savoy road turns off 400 feet south of Don's drive-in when he first saw the car *stopped* in front of Don's drive-in. At that time he did not see any other vehicle but when the car got out on the road and had gotten on its side of the road and had driven about 100 feet or so the truck came over in the north-bound lane. He is positive that the car had traveled about 100 or 125 feet when it was struck by the truck. When asked, "how far from the center line in the north-bound lane,?" his response was, "I couldn't say that, but he was in the north-bound lane." At another point on direct examination he was asked, "How much of the truck was over in the north-bound lane at the time of the collision?" His answer, "I couldn't say exactly about that but I know that his left front wheel was." On cross-examination he was asked, "Now when the car pulled out on the highway did it go straight across on the highway or did it go at an angle on the highway?" His answer was, "He kindly curved around." He further testified on cross-examination that when he first saw the car it was ten feet from the edge of the pavement and, "looked to me like it was stopped there." And, again

he was asked relative to the position of the automobile at the time it was struck, "Was it completely in the north-bound lane or was it partly in the north-bound lane?" Here he answered, "Completely."

Then upon cross-examination to whether the car stopped before entering the highway, he was asked, "Then after it started there and came to the edge of the highway it didn't stop any more. Is that right?" His answer was, "From the time it started, it didn't stop." It developed later that this witness had signed a written statement concerning the collision which reads as follows:

"Dayton, Ohio. May 4, 1964. Statement of Robert L. Loudin, age 27, married, now living at 646 Meredith, Dayton, Ohio. I am employed in the trash collection for the City of Dayton."

"On December 19, 1963, around two p. m., I witnessed an accident about one mile south of Williamsburg, on Route 25 in front of Don's Drive-In. As I recall it was clear and the pavement was dry. I was driving north on Route 25 about 25 or 30 miles per hour. I had as passenger my wife, Lola. When I was about 100 feet south of the drive-way of the Drive-In I saw a car pull out of the driveway of Don's Drive-In to the south of the Drive-In building. From my vision of this car same did not stop before pulling on to Route 25. This car then cut across the pavement, headed north in a diagonal direction. I then saw a tractor trailer coming from the north, headed south. At the time the car started to pull out I would judge the front of the tractor was just to the north of where old Route 25 comes into Route 25. I cannot estimate the speed of the tractor, however the driver seemed to be moving pretty fast. I started to slow down when I saw the car and truck, and then stopped at the south end off of the road in parking lot at Adkins Motel. I saw the car which was a Plymouth, still going in a diagonal direction across the highway and when the right of the Plymouth was just across the cen-

ter line the driver of the tractor evidently attempted to cut to the left and right front of tractor struck the left side of the Plymouth. When the outfit stopped, they were side by side in front of the motel. They were both headed south with tractor and trailer off of the pavement and the car was partially on the pavement. There was only the driver in the car, and this boy was taken into Williamsburg, I do not know the speed of the Plymouth, but he seemed to be pulling out pretty fast. I did not know either driver, but I learned the boy's name was Taylor, and that he later died of injuries. The boy's father came to me several weeks after the accident at my home in Emlyn, Kentucky. I do not know if there were any other eye witnesses. The above is a true version of the accident as seen by me."

Photographs of the vehicles placed in evidence show conclusively that the Plymouth automobile was struck about the left front wheel at what appears to be a 45° angle of the automobile. Photographs taken at the scene of the collision show that when the car and truck collided they moved together, the car swinging around to the right side of the truck to a point just off the paved portion of the highway to where they stopped.

The majority opinion holds Loudin's testimony to be sufficient to take the case to the jury. I disagree. When the inconsistent and inconclusive statements are disregarded, his testimony, instead of contradicting the other witnesses, corroborates them. He said in one place the driver stopped before entering the highway, in another place he says he did not stop. If we are to give weight to his testimony to which statement do we give the weight? Reason and logic dictate that we must accept the statement that agrees with all other testimony. This being true then we should only give weight to his statement that the driver did not stop. The same holds true as to his statements concerning the angle the auto entered the road and its position when struck. Is a statement of a witness which is inconsistent

with his other statements and inconsistent with all other testimony in the case sufficient to support a verdict? Apparently the majority thinks so, in this case anyway. I do not. We have many times held otherwise. See Robert Beedle & Sons, Inc. v. Stone, Ky., 441 S.W.2d 121 (March 7, 1969); Mix v. Smith, Ky., 387 S.W.2d 1; Bell & Koch, Inc. v. Stanley, Ky., 375 S.W. 2d 696; Lee v. Tucker, Ky., 365 S.W.2d 849.

I believe the facts show the decedent was negligent as a matter of law in entering upon the highway from a private road or driveway without yielding, KRS 189.330(7). This statute reads:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on the highway."

This court in the case of Brumbach v. Day, Ky., 260 S.W.2d 939, reversed a jury verdict for a plaintiff with directions to enter judgment for the defendant in an analogous situation. Day drove a motor scooter from near the parking area of a filling station onto the highway closely in front of Brumbach's truck, which was using the highway, and was injured in the collision. The court in that opinion said:

"It was clearly the duty of Mr. Day, before re-entering the highway, to look to the east for approaching vehicles and not to proceed into the highway if he saw one coming, unless he could re-enter the highway in safety. KRS 189.330(6). (Now KRS 189.330(7).) Of course, Mr. Day was not required to exercise an infallible judgment, but was required to use such care as a reasonably cautious and prudent person would exercise under the circumstances.

"However, Mr. Day does not claim that he saw the approach of Brumbach's car from the west, nor that he believed that he had time to safely re-enter the highway, but claims he looked and saw no vehicle approaching on the highway. Either Mr. Day did not look for approaching vehicles on the highway or failed to see Brumbach's car, which must have been very close and in plain sight. In either event Day was negligent.

"In Vaughn v. Jones, Ky., 1953, 257 S.W.2d 583, it was said:

" 'Thus, it appears that Jones moved out into the highway after looking in the direction from which Vaughn was coming when it was "approaching so closely on the highway as to constitute an hazard." KRS 189.330(4). It was not sufficient that he should have stopped, but have yielded the right-of-way by not proceeding into the highway. KRS 189.-330(4) Vaughn could assume, under the circumstances, that Jones would conform to the law and remain where he was until the way was reasonably clear and could act upon that assumption in determining his own manner of using the road. Short v. Robinson, 280 Ky. 707, 134 S.W.2d 594. The only excuse Jones offers is that he did not see the Vaughn car. We have said that testimony that one looked and did not see a train that was right on him was entitled to no reasonable credence; that "he will not be heard to say that he looked but did not see" it. Nashville, C. & S.L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493; McCarter v. L. & N.R. Co., 314 Ky. 697, 236 S.W.2d 933. Sometimes maybe failure to see is because one's mind was not registering what his eyes beheld. "Mental abstraction, not due to any surrounding circumstances, does not paliate inattention to a known danger." 38 Am.Jur., Negligence, Sec. 187. If, under the circumstances, Jones ought to have seen the approaching car, he is guilty of negligence even though he testified he did not see it.' (Citing authorities.)"

Those cases were followed in a similar situation in the case of Couch v. Hensley,

Ky., 305 S.W.2d 765 and Manning v. Claxon's Executrix, Ky., 283 S.W.2d 704.

In the case of Riggs v. Miller, Ky., 396 S.W.2d 69 (1965), this court held that a motorist traveling on a secondary road and who drove his truck from that road onto an arterial highway and had traveled from 80 to 85 feet on the main highway when struck in the rear by an approaching vehicle was negligent as a matter of law and was solely responsible for the accident, despite the fact that the vehicle traveling on the main highway left skid marks of at least 231 feet in length before the impact.

In the recent case of Chambliss v. Lewis, Ky., 382 S.W.2d 207 (1964), the evidence was that Chambliss was traveling on the main highway when Lewis drove onto the main highway from a secondary side road when the two vehicles collided. Lewis testified that he came to a stop at the intersection and looked in both directions. He further testified that he observed a car approaching from 400 to 1000 feet to his left, but that he assumed that he had time to enter and cross. There was testimony that the Chambliss car was traveling at a speed of 70 to 75 miles per hour. In reversing a judgment in favor of Lewis and his passenger against Chambliss, this court stated:

"KRS 189.330(4) requires a motorist entering a main highway from a secondary road to stop and not proceed if an approaching car is so close as to constitute an immediate hazard. Couch v. Hensley, Ky., 305 S.W.2d 765.

"Under the circumstances Chambliss could assume that Lewis would conform to the law and remain where he was until the way was reasonably clear and could act upon the assumption in determining his own manner of using the road. Vaughn v. Jones, Ky., 257 S.W.2d 583.

"In the case at bar, Lewis saw the approaching automobile and moved onto the highway in view of the known danger. It appears that Lewis assumed the risk in trying to cross the highway knowing that a collision could result. With the car so near, whether Lewis stopped or didn't stop, he should have yielded the right-of-way by not proceeding onto the highway in the face of the known approaching automobile. Couch v. Hensley, supra, and Vaughn v. Jones, supra. Lewis testified that he clearly saw the Chambliss car but thought that he had time to cross the road. This assumption, coupled with the fact that a collision did result, is conclusive that Lewis was negligent.

"It is our opinion that under circumstances such as in this case, where the approaching car on the arterial highway was in view for an unlimited distance, the speed of the approaching car cannot be considered to be a causative factor. From the standpoint of physics, the cause is simply that the two vehicles are attempting to occupy the intersection at the same moment. However, from the standpoint of law, the reason (excessive speed or otherwise) why the car on the arterial highway happens to be in the intersection at that moment is immaterial, if the fact that it would be there at that moment was reasonably observable to the driver of the car on the inferior highway, because then the latter driver has the duty not to be in the intersection at that moment. The negligence of Lewis in the instant case was the sole cause of the accident. Therefore the court should have directed a verdict for Chambliss as against both Charles Lewis and Mae Lewis."

I simply cannot believe that reasonable minds can differ but that the sole cause of the collision in this case was the negligence of the decedent in not stopping and yielding the right-of-way before he entered the superior highway in the immediate presence of the truck. The majority opinion attempts to evade this cold, harsh reality by intimating that the truck had no adequate explanation for being on the wrong side of the road. To me this is ridiculous. It is perfectly obvious that the truck driver did

nothing more than try to avoid a head-on collision. There is no evidence whatsoever in the record that the truck driver had any earthly reason for swerving to the left except in a desperate last-minute attempt to miss the car. The majority in its opinion states:

"If the explanation is so clear and convincing and all the circumstances and fair inferences that could be drawn from them show that the reason for being on the wrong side of the road was completely unrelated to any negligence of the defendant, then the defendant is entitled to win by directed verdict, but if the reasons, circumstances or the inferences are not that clear then the jury must determine the question."

Certainly under this rule no fair-minded person can argue but what the appellant was entitled to a directed verdict. This case disturbs me because I feel we have done a grave injustice to the parties involved. It disturbs me even more because it destroys the concept of "right-of-way" for all people using the highways of this Commonwealth.

For the foregoing reasons, I respectfully dissent.

MONTGOMERY, C. J., joins in this dissent.